UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| M. JEANIE D., | ) |
| --- | --- |
| Plaintiff | ) |
| v. | ) No. 2:19-cv-00193-GZS |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) |
| Defendant | ) |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work. The plaintiff seeks remand on the basis that the ALJ "erroneously evaluated the opinion evidence of record[,]" specifically, that of treating provider Jennifer Pyenta, D.O, and agency nonexamining consultants Robert Hayes, D.O., and Edward Ringel, M.D. Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1, 7-10. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, Finding 1, Record at 12; that she had the severe impairments of degenerative disc disease, degenerative joint disease, and migraine headaches, Finding 3, *id*.; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she could frequently balance, occasionally climb, stoop, kneel, crouch, and crawl, and tolerate frequent exposure to extreme cold, vibration, dust, odors, fumes, other pulmonary irritants, and hazards such as unprotected heights or moving mechanical parts, Finding 5, *id*. at 15; that she was capable of performing past relevant work as a Small Parts Assembler, Cashier I, Receptionist, Department Manager, and Assistant Manager, Retail Sales, Finding 6, *id*. at 18; and that she, therefore, had not been disabled from August 6, 2016, her alleged onset date of disability, through the date of the decision, June 26, 2018, Finding 7, *id*. at 18-19. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

The plaintiff argues that the ALJ "erroneously evaluated the opinion evidence of record in determining [the plaintiff]'s RFC[,]" Statement of Errors at 4 (boldface omitted), specifically, by according little weight to the opinion of her treating physician, Dr. Pyenta, and great weight to the opinions of the agency nonexamining consultants, Drs. Hayes and Ringel, *see id*. at 7-9. For the reasons that follow, I find no reversible error in the ALJ's weighing of the opinion evidence.

The plaintiff's bid for remand, accordingly, amounts to an unavailing invitation to the court to reweigh that evidence. *See Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").

## A. Treatment of Treating Source

Dr. Pyenta first examined the plaintiff on January 30, 2018, noting that she appeared to be "in no acute distress" and recommending, with regard to her "chronic headaches[,]" that she "try[] to decrease her butalbital use[,]" see a neurologist, and "try Botox injections[,]" which the plaintiff told Dr. Pyenta "she would be afraid to try[.]" Record at 606, 610, 612. On March 28, 2018, the plaintiff followed up with Dr. Pyenta regarding, *inter alia*, her "headaches . . . [and] back pain[.]" *Id*. at 621. As part of her assessment/plan, Dr. Pyenta described the plaintiff as having "[k]nown facet disease and moderate lumbar stenosis with worsening symptoms, especially on the RLE [right lower extremity,]" and noted that she would order a new MRI of her lumbar spine. *Id*. at 624.

On April 25, 2018, the plaintiff saw Dr. Pyenta for her annual examination, *see id*., following which Dr. Pyenta concluded, in relevant part:

**3. DDD (degenerative disc disease), lumbar**

Pain meds per pain clinic. Advised to call radiology for MRIs on disc. As far as determining functional capacity for disability, I will either arrange for a referral or have her return to this office for a visit dedicated to that evaluation.

**4. Cervicogenic headache**

Consider interventional procedures for cervical spine. She will discuss with pain clinic.

*Id*. at 629 (boldface in original).

Dr. Pyenta then submitted a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS") dated May 3, 2018, in support of the plaintiff's application for disability benefits. *See id.* at 632-37. She assessed significant limitations in nearly all areas of physical function, including lifting/carrying, sitting/standing/walking, and use of hands and feet,

as well as postural and environmental limitations. *See id*. With respect to five of the seven categories listed on the form, all but sitting/standing/walking and hearing/vision, she provided the following responses to prompts for "medical or clinical findings which support" the assessed limitations:[3]

    I. LIFTING/CARRYING

    . . . .

    MRI cervical spine – multilevel disc + facet degeneration

    MRI lumbar spine – multilevel disc + facet disease nerve root impingement of L5-S1 mild lumbar stenosis

    . . . .

    III. USE OF HANDS

    . . . .

    Patient develops headaches + migraines with reaching/pushing/pulling due to cervical spine disc disease. She also has pain/stiffness in the hands.

    IV. USE OF FEET

    . . . .

    Use of feet sometimes causes pain in the low back due to disc disease. She also has left hip pain due to arthritis in the left hip. She feels at times her muscle strength is decreased.

    V. POSTURAL LIMITATIONS

    . . . .

    Due to chronic neck + back pain from disc disease of the spine she will have pain or be unable to perform most of the above activities. She is/will be susceptible to further injury[.]

---

[3] With respect to Category II, sitting/standing/walking, Dr. Pyenta did state, in response to the question, "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activities is the individual performing for the rest of the 8 hours?": "house chores – Cooking, dishes, taking care of dogs (can no longer walk the dog due to pain)[,] laying down up to 3-4 hours during the day[.]" Record at 633. With respect to Category VI, she indicated that she had not evaluated the plaintiff's hearing and vision. *See id*. at 635.

> . . . .
>
> VII.  ENVIRONMENTAL LIMITATIONS
>
> . . . .
>
> Chronic joint pain (hands/hips) aggravated by driving – specifically gripping steering wheel and sitting over 30 minutes causes back + neck pain, joint pain exacerbated by extremes in temperature/humidity.  Migraines triggered by some fumes/smells and any activity that involves reaching arms out even at waist level – such as keyboarding, using cash register, assembly line type work will cause neck pain + trigger headaches due to lumbar disc disease.  She would be at risk for injury at unprotected heights.

*Id.*[4]

> The ALJ accorded "[l]ittle weight" to the Pyenta opinion, explaining:
>
> This report appears to be based heavily on the [plaintiff]'s own reporting of her conditions and is inconsistent with the medical evidence as well as the [plaintiff]'s presentation at her hearing.  For example, Dr. Pyenta suggested the [plaintiff] would sit for approximately 20-30 minutes at a time, which is inconsistent with the fact that [she] was able to sit comfortably for the duration of her 40 minute hearing. (Hearing Testimony).

*Id.* at 17-18.

For cases filed on or before March 27, 2017, as is the case here, *see id.* at 10, a treating source's medical opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating source's opinion is not given controlling weight, however, it is weighed in accordance with enumerated

---

[4] Notably, Dr. Pyenta affirmatively identified on the form no problems in the plaintiff's ability to perform activities "like shopping[,]" "travel[ing] without a companion for assistance[,]" "ambulat[ing]without using a wheelchair, walker, or 2 canes or 2 crutches[,]" "walk[ing] a block at a reasonable pace on rough or uneven surfaces[,]" "us[ing] standard public transportation[,]" "climb[ing] a few steps at a reasonable pace with the use of a single hand rail[,]" "prepar[ing] a simple meal & feed[ing] . . . herself[,]" "car[ing] for [her] personal hygiene[,]" or "sort[ing], handl[ing], or us[ing]paper/files[.]"  Record at 637.

factors. *See id*.[5] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See*, *e.g.*, *id*. ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in West's Social Security Reporting Service Rulings 1983-1991 (Supp. 2019) ("SSR 96-8p"), at 149 (an ALJ can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See*, *e.g.*, *Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff does not contend that the ALJ was required to give controlling weight to the Pyenta opinion. *See* Statement of Errors at 7-10. However, she asserts that (i) the sole cited example of inconsistency – that she sat comfortably for a 40-minute hearing – is unsupported by substantial evidence, (ii) the ALJ erred in characterizing Dr. Pyenta's opinion as heavily based on her subjective complaints, (iii) the ALJ failed to address the manipulative limitations that Dr. Pyenta assessed, and (iv) the ALJ erroneously discounted limitations stemming from her migraine headaches on the bases that she had both declined treatment and had gaps in treatment for that condition. *See id*. I find no reversible error.

The plaintiff first contends that the ALJ's finding that she "was able to sit comfortably for the duration of her 40 minute hearing" is unsupported by the record, both because the hearing lasted for only 34 minutes, *id*. at 8; Record at 31, 58, and because, "[a]pproximately half way through the hearing," her attorney remarked that she appeared uncomfortable, and she agreed:

---

[5] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, the adequacy of the explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

> Q Let's . . . go over to your back and your neck and your hip. How do these all affect your ability to, to sit? I notice you're kind of squirming around right now.
>
> A It makes it hard, it's like I have to constantly change positions because one position might start out comfortable for a few minutes and then it's almost like a pressure build up and then it goes from pressure to pain.

Statement of Errors at 8; Record at 44.

Nonetheless, as the commissioner argues, neither the colloquy between the plaintiff and her counsel nor the fact that the hearing lasted for 34 minutes "undercut[s] the ALJ's finding." Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 18. First, even accepting that the hearing lasted for 34 minutes, it went longer than 30 minutes, which Dr. Pyenta indicated was the longest the plaintiff could sit without interruption. *See* Record at 633. Second, the plaintiff cites no authority for the proposition that the ALJ should have deferred to the plaintiff's counsel's observation rather than to his own observation of the plaintiff. To the contrary, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987); *see also, e.g., Dana v. Astrue*, Civil No. 09-514-BW, 2010 WL 3397465, at *2 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 13, 2010) ("The plaintiff's argument on this point essentially takes issue with the [ALJ]'s choice of what evidence to believe, or what weight to give certain evidence, and that is not a basis for remand.").

The plaintiff next challenges the ALJ's finding that the Pyenta opinion was based heavily on her subjective complaints, arguing that, "contrary to the ALJ's finding, Dr. Pyenta cited to a March 2018 MRI of [the plaintiff]'s cervical spine showing multilevel facet degeneration and an April 2018 MRI of her lumbar spine showing multilevel disc and facet disease, nerve root

impingement of L5-S1, and mild lumbar stenosis." Statement of Errors at 8 (citing Record at 433-36, 492, 632).

That Dr. Pyenta cited two MRI reports in support of her lifting/carrying restriction does not undermine the ALJ's finding that her opinion overall "appear[ed] to be based *heavily* on the claimant's own reporting of her conditions." Record at 18 (emphasis added). In any event, Dr. Pyenta did not explain how the MRI results translated into the specific limitations that she assigned.[6] Nor do her treatment notes make up for the deficiency. As the commissioner observes, *see* Opposition at 6, Dr. Pyenta's own observations on examination of the plaintiff were largely unremarkable: she objectively observed that the plaintiff was not in acute distress, her neck was supple without any lymphadenopathy or thyromegaly, her extremities had no edema, and neurologically she was grossly intact with no focal deficits, *see* Record at 610, 622-23, 628.

The ALJ, hence, reasonably characterized the Pyenta opinion as based heavily on the plaintiff's subjective complaints. That, in turn, was a valid reason to assign it less weight. *See, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (that a treating source based his or her opinion primarily on a claimant's subjective allegations is a "well-recognized bas[i]s in Social Security law for rejection of a treating physician's conclusions") (footnote and citations omitted).[7]

The plaintiff next complains that the ALJ failed to evaluate "the manipulative limitations set forth in Dr. Pyenta's opinion or [offer] any specific reasons why such limitations are

---

[6] The same is true of Dr. Pyenta's conclusions that the plaintiff ha[d] specified limitations "'due to cervical spine disc disease[,] . . . arthritis in the left hip[,] . . . pain in the low back due to disc disease[,]'" and migraines. Statement of Errors at 6-7 (quoting Record at 634-36).

[7] Although Dr. Pyenta listed the two MRI reports at issue as objective evidence only in support of her lifting/carrying limitations, the plaintiff correctly notes that she listed degenerative disc disease as a basis for her extensive assessed manipulative, postural, and environmental limitations. *See* Statement of Errors at 9; Record at 634-36. The ALJ, nonetheless, fairly described the limitations set forth therein as heavily based on the plaintiff's subjective complaints. *See* Record at 18.

9

inconsistent with the evidence of record." Statement of Errors at 9. Yet, while the ALJ did not expressly address those limitations, he generally noted evidence of limited treatment, *see* Record at 16-17, which constitutes a valid bases on which to discount a treating source's assessment of significant limitations, *see, e.g., Perkins v. Astrue*, 648 F.3d 892, 898-99 (8th Cir. 2011) (affirming ALJ's reliance, *inter alia*, on claimant's "conservative treatments, including a brief course of physical therapy[,]" in discounting treating physician's medical source statement).

Finally, the plaintiff challenges the ALJ's discounting of limitations stemming from her migraine headaches on the basis of gaps in, and refusal of, treatment. *See* Statement of Errors at 10. Specifically, she takes issue with the ALJ's findings that "'[t]he claimant has declined forms of treatment due to a fear of needles and has instead chosen to maximize her use of the medications described above' for other pain symptoms that have been indicated to possibly make her headaches more difficult to control, and '[t]he large gaps in the claimant's treatment for her alleged migraines suggests that she has maintained an acceptable level of control with these medications.'" *Id.* at 9-10 (quoting Record at 17).

She asserts that, "[c]ontrary to the ALJ's findings, treatment notes from both Dr. Pyenta and treating neurologist Stephanie Lash[, M.D.,] from shortly prior to [the plaintiff]'s hearing indicate a lengthy history of medication treatment for migraine headaches that had proven to be ineffective, despite [her] reduction in use of some medications as recommended, and an indication that her migraine headache symptoms were probably related to the symptoms of degenerative disc disease in her cervical spine, as described in Dr. Pyenta's opinion, resulting in a referral for EMG testing which does not appear to have been completed in time to be in evidence prior to the hearing." *Id.* (citing Record at 619-29, 634-36). She adds that the ALJ's handling of this issue contravened Social Security Ruling 16-3p ("SSR 16-3p"), which provides that the commissioner

10

"'will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.'" *Id*. (quoting SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2019), at 673).

That the plaintiff had a "lengthy history of medication treatment for migraine headaches that had proven to be ineffective" does not contradict the pertinent portion of the ALJ's findings. As the commissioner notes, *see* Opposition at 15, the ALJ acknowledged the plaintiff's lengthy history of medication use, noting that in 2014 she used Valium, Vicodin, and gabapentin, in 2017 "she was taking several medications" including "Fioricet, Maxalt and Compazine[,]" and in 2018 she "frequen[tly] . . . use[d] . . . butalbital and daily use[d] nonsteroidal and narcotic medication for other pain control[,]" Record at 17. However, the ALJ noted that Dr. Lash considered her frequent medication use "concern[ing]," observing that, with such frequent use, "it may be very difficult to get her headaches under control with this combination." *Id*. (citation and internal quotation marks omitted).

That there were gaps in treatment for the plaintiff's migraine headaches, and that she refused potentially effective treatment in the form of Botox injections, constituted valid reasons to discount the extent of limitations stemming from them. *See, e.g.*, *Moret Rivera v. Sec'y of Health & Human Servs.*, 19 F.3d 1427 (table), No. 93-1700, 1994 WL 107870, at *5 (1st Cir. Mar. 23, 1994) ("A gap in the medical evidence may itself be evidence that the claimant's condition was not as dire as alleged."); *Galford v. Astrue*, Civil Action No. 5:09CV102, 2010 WL 5441634, at *19-20 (N.D. W. Va. Dec. 8, 2010) (noting that declining treatment cuts against a finding of disability absent good reason to do so; concluding that claimant's fear of needles not a good reason to decline prescribed treatment).

As the commissioner observes, *see* Opposition at 15, to the extent that the plaintiff contends that the ALJ contravened SSR 16-3p by failing to consider her reasons for the gaps in treatment for migraine headaches, she fails to meet her burden on appeal of identifying reasons for those gaps, *see* Statement of Errors at 10; *Roxauna M. v. Berryhill*, No. 1:17-cv-00350-NT, 2018 WL 3493075, at *6 (D. Me. July 20, 2018) (rec. dec., *aff'd*, Aug. 22, 2018) ("Yet, while [the ALJ] did not consider any possible reasons for these purported failures, the plaintiff identifies none that he could have considered, instead arguing that he had a duty to make such an inquiry.").

While she asserts that the ALJ contravened SSR 16-3p in failing to take into account her fear of needles in declining Botox treatment, she concedes that he noted her unwillingness to try Botox among other "'forms of treatment'" for "'fear of needles'" and offers no reasoned argument why he was obliged to deem this a good reason for refusing treatment. Statement of Errors at 9 (quoting Record at 17). In any event, as the commissioner notes, *see* Opposition at 16, the record reflects that the plaintiff had a hip injection in May 2017, *see* Record at 442-43, and a corticosteroid injection in November 2017, *see id*. at 605, bearing on the weight of her justification for forgoing forms of treatment requiring the use of needles.

Finally, that Dr. Pyenta indicated that the plaintiff's migraine headache symptoms might have been related to her cervical degenerative disc disease does not undercut the ALJ's findings regarding that impairment. As the plaintiff acknowledges, *see* Statement of Errors at 10, the record is inconclusive. While Dr. Pyenta referred the plaintiff for EMG testing to explore that possible connection, no EMG results are of record. *See id*.

In sum, the ALJ did not erroneously evaluate Dr. Pyenta's opinion because the ALJ gave substantially-supported "good reasons" for giving her opinion little weight.

## B. Treatment of Agency Nonexamining Consultants

The plaintiff also challenges the ALJ's assignment of great weight to the opinions of agency nonexamining consultants Drs. Hayes and Ringel. *See* Statement of Errors at 8-9. The ALJ explained:

> [A]t the Initial level, Robert Hayes, DO opined that the [plaintiff] would be capable of a restricted range of light work with frequent balancing and occasional climbing of ramps, stairs, ladders, ropes and scaffolds, stooping, kneeling, crouching and crawling. Dr. Hayes opined that the [plaintiff] should avoid concentrated exposure to extreme cold, vibrations, fumes, odors[,] dusts, gases, and poor ventilation due to their ability to trigger migraines and concentrated exposure to hazards and operation of hazardous machines due to a long history of sedative medication use. At Reconsideration, Edward Ringel, MD adopted the restrictions set forth by Dr. Hayes. Great weight is given to these opinions as they are consistent with the objective medical record and the [plaintiff]'s course of treatment for her conditions, which shows that [she] has been able to retain independence and that she was able to recover from her hip surgery without the need for home health care or physical therapy.

Record at 17 ( internal citations omitted).

"The amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Id*. (citations and internal quotation marks omitted)). This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the

preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The plaintiff contends that because Drs. Hayes and Ringel did not see the March 2018 and April 2018 cervical and lumbar MRI reports, which she characterizes as revealing "'new or progressive'" abnormal findings compared with the 2014 MRI reports that they did review, their opinions cannot stand as substantial evidence in support of the ALJ's RFC determination. Statement of Errors at 8-9; *compare* Record at 60-69 (containing Hayes opinion), 82-93 (containing Ringel opinion) *with id*. at 433-36 (April 2018 MRI report), 492 (March 2018 MRI report).

Yet, the ALJ discussed the 2014 and 2018 MRI reports. He noted that the April 3, 2014, lumbar spine MRI report revealed degenerative changes at the L5-S1 level and moderate spinal stenosis at the L4-L5 level with ligamentum hypertrophy, while the April 4, 2018, lumbar spine MRI report revealed mild spinal canal narrowing and moderate bilateral subarticular zone and foraminal narrowing and was inconclusive for a "tiny" right foraminal disc protrusion at L2-L3. *See* Record at 16. He added that, while the June 3, 2014, cervical spine MRI report revealed early degenerative disc disease, the March 20, 2018, cervical spine MRI report showed progressive left-sided recess and foraminal narrowing at the C6-C7 level with bilateral recess narrowing at the C4-C5 and C5-C6 levels, likely progressive. *See id*.

The plaintiff, nonetheless, complains that the ALJ minimized the findings in the 2018 MRI reports and ignored Dr. Pyenta's interpretation of the 2018 lumbar spine MRI as revealing nerve-root impingement at L5-S1. *See* Statement of Errors at 8-9; Record at 632 (notation by Dr. Pyenta on first page of her MSS opinion that 2018 lumbar spine MRI revealed "multilevel disc + facet

14

disease[,]" "nerve root impingement of L5-S1[,]" and "mild lumbar stenosis"). She elaborates that "the ALJ's findings appear to understate the significance of the findings set forth in the MRI report[,]" which described "more extensive abnormalities than indicated by the ALJ's finding[,]" and, in any event, Dr. Pyenta "was in a better position to offer an opinion regarding the significance of the MRI report findings than the ALJ, as a lay-person[,]" Statement of Errors at 8.

On the first point, as the commissioner argues, "[the] [p]laintiff fails to identify any particular abnormality in the MRI results that she believes was improperly omitted" or understated. Opposition at 7. On the second point, as the commissioner observes, *see id.*, the radiologist who interpreted the MRI did not note nerve-root impingement but, rather, "moderate bilateral subarticular zone and foraminal narrowing, *potentially impacting* the traversing bilateral L5 and exiting bilateral L4 nerve roots respectively" and "mild active endplate degeneration and moderate right-sided foraminal narrowing at L5-S1 *and please correlate with any right L5 radicular symptoms*[,]" Record at 434 (emphasis added). Such equivocal findings are not, in themselves, proof of a disabling degenerative disc disease impairment. *See*, *e.g.*, *Lindsay S. v. Berryhill*, No. 2:18-cv-00017-JHR, 2019 WL 1447466, at *3 (D. Me. Mar. 31, 2019) ("[T]he May 2016 MRI report, which recommended '[c]linical correlation' of the MRI findings and '[f]ollow up as clinically warranted[,]' was not, in itself, proof of a disabling or significant back impairment." (citation and internal quotation marks omitted) (alterations in original)).

Beyond this, the ALJ went on to cite additional record evidence that cuts against a finding that the 2018 MRI reports were material. He noted that, although the plaintiff had an emergency department visit for back pain in 2012 and was referred for physical therapy in May 2013 due to reports of back pain, there was "no indication in the record that [she] ha[d] had additional physical therapy, a TENS unit, or that she ha[d] tried other conservative modalities[,]" and "no indication

that [she] ha[d] been referred to a surgical specialist for further evaluation or treatment." Record at 16.

The plaintiff does not challenge the ALJ's reliance on this evidence, which, in conjunction with the ALJ's discussion of the 2018 MRI reports, supplies substantial evidence that those reports did not undermine his reliance on the opinions of Drs. Hayes and Ringel. *See*, *e.g.*, *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. June 7, 2013) (an ALJ may rely on the opinions of agency nonexamining consultants who have not seen later-submitted evidence when that evidence does not "call into question their conclusions").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within forty-four (44) days after being served with a copy thereof.[8]  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of April, 2020.

                                    /s/ John H. Rich III
                                    John H. Rich III
                                    United States Magistrate Judge

---

[8] Federal Rule of Civil Procedure 72(b)(2) provides for a 14-day objection period.  The Court, however, recently extended by 30 days any deadline between the date of the order (March 18, 2020) and May 1, 2020. (General Order 2020-2.)